UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joshua Rothstein,                                  Civil No. 09-3387 (JMR/SRN)

       Plaintiff,                              REPORT & RECOMMENDATION

v.

Kemps, LLC

       Defendant.

---

Joni M. Thome & Matthew S. Nolan, Halunen & Associates, 1650 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402

Lee A. Lastovich & Brian T. Benkstein, Felhaber, Larson, Fenlon & Vogt, PA, 220 South Sixth Street, Suite 2200, Minneapolis, Minnesota 55402.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter is before the Court upon Defendant's Motion to Dismiss Counts I, III and IV of the Complaint (Doc. No. 2). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons set forth herein, the Court recommends that Defendant's motion be granted.

**I.    BACKGROUND**

    Plaintiff Joshua Rothstein was formerly employed by Defendant Kemps, LLC, which manufactures and markets milk and dairy products. (Complaint ¶¶ 2, 3.) Plaintiff filed this lawsuit against Kemps on November 25, 2009, alleging claims of disability discrimination under the Americans with Disabilities Act ("ADA"), disability discrimination and reprisal under the

1

Minnesota Human Rights Act ("MHRA") and workers' compensation retaliation under Minnesota state law.

Plaintiff began working for Kemps on December 1, 2000 until he was terminated on June 24, 2008. (Id. ¶¶ 10, 11.) During his employment with Kemps, Mr. Rothstein worked in a variety of positions involved in the dairy manufacturing process. (Id. ¶¶ 11-12.) Based on the nature of his position, Mr. Rothstein's employment terms were subject to a collective bargaining agreement and he was represented by a labor union during his employment with Kemps. (See id. ¶¶ 29, 31.)

In May 2005, Plaintiff suffered back injuries on the job, for which he sought treatment and received workers' compensation benefits and temporary partial disability benefits. (Id. ¶ 13.) During the next three years, Mr. Rothstein worked off and on at Kemps, due to re-injury and subsequent physical and medical restrictions. (See id. ¶¶ 14, 17, 22-24.) On February 19, 2008, Plaintiff received a letter from Kemps' Director of Human Resources, Roxanne Johnson, advising him that he no longer had an assigned job with Kemps and he was to bid on job openings that became available. (Id. ¶ 29.) Under his union contract, Plaintiff believed that he had two years in which to find a position, and that for any bid, he had one month in which to qualify for the job. (Id.)

On June 24, 2008, Kemps notified Mr. Rothstein by letter that it was unable to accommodate his work restrictions and was terminating him, effective that day. (Id. ¶ 31.) Plaintiff alleges that he was confused by this notice and that his union representative, John Kobler, told him that everything would be "straightened out." (Id. ¶ 31.) On August 31, 2008, Mr. Rothstein received a letter from Kemps concerning medical benefits, which reiterated that

his employment with Kemps had been terminated.  (Id. ¶ 32.)

In November 2008, Plaintiff's Qualified Rehabilitation Consultant ("QRC") contacted Holly Tappen from Kemps' Human Resources Department to verify that she had received Mr. Rothstein's workability report and to ask whether he was considered an employee.  (Id. ¶ 35.)  Although Ms. Tappen affirmed that she had received the report and she believed that Plaintiff was still an employee, she advised the QRC to confirm Plaintiff's employment status with Roxanne Johnson, Director of Human Resources.  (Id.)  The QRC spoke with Ms. Johnson, who stated that Mr. Rothstein was no longer an employee.  (Id. at ¶ 36.)

In December 2008, Kemps sent Mr. Rothstein another letter stating that he was no longer employed by Kemps and no longer possessed seniority rights with which to bid on jobs.  (Id. ¶ 38.)  Shortly thereafter, the QRC contacted Mr. Kobler, Plaintiff's union representative, who told the QRC that Defendant's information was incorrect, i.e., that Plaintiff had seniority rights and that he would "straighten it out."  (Id. ¶ 40.)  In the weeks that followed, Mr. Kobler and the QRC discussed certain job postings for a "debagger" position as well as Mr. Rothstein's seniority status.  (Id. ¶ 40.)

In February 2009, the QRC and Mr. Kobler spoke again about Plaintiff returning to work.  Mr. Kobler recommended that Plaintiff undergo an independent medical examination to support his doctor's approval that he return to work.  Plaintiff did so and provided the supporting paperwork.  (Id. ¶¶ 42-43.)

In March 2009, Mr. Rothstein learned of new postings for debagger positions and believed that he was entitled to bid on those jobs.  (Id. ¶ 44.)  On March 12, 2009, the QRC spoke to Ms. Johnson in Human Resources.  Ms. Johnson informed the QRC that Plaintiff was

3

not an employee, had no bidding rights and had been misinformed by the union about his employment status and had passed any deadline for arbitration. (Id. ¶ 45.)

On April 9, 2009, Mr. Kobler sent a letter to Holly Tappen in Human Resources restating that Mr. Rothstein's physicians had approved him to perform debagger duties and demanding reinstatement under the contract. (Id. ¶ 46.) Because Kemps did not respond, the union was unwilling to assist Plaintiff further. (Id.)

Believing that his rights under the ADA had been violated, Plaintiff filed a charge of disability discrimination with the EEOC on July 20, 2009. (Id. ¶ 47.) The EEOC issued a right to sue letter to Plaintiff on August 28, 2009. (Id. ¶ 48.) Plaintiff filed this lawsuit on November 25, 2009.

## II. DISCUSSION

### A. Defendant's Motion

Defendant moves to dismiss Plaintiff's federal causes of action for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Kemps argues that Plaintiff's federal claims are time-barred because, under the ADA, Mr. Rothstein was required to file an administrative charge of discrimination within three hundred days of his termination. Also, under the MHRA, Mr. Rothstein was required to file an administrative charge or commence a civil action within one year of his termination. Having failed to do either, Kemps argues that Plaintiff fails to state a claim under Rule 12(b)(6) and, accordingly, his federal claims should be dismissed.

In response, Plaintiff argues that his date of termination is a question of fact and that even if his employment was terminated as of June 24, 2008, Kemps continued to have an obligation to

4

interact with Plaintiff as a job applicant until at least September 27, 2009.  By failing to consider Plaintiff for jobs during that period, Plaintiff argues that the continuing violation doctrine applies and tolls the statute of limitations.

### 1. Dismissal for Failure to State a Claim

In considering a Rule 12(b)(6) motion to dismiss, "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff.  E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "The complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), and must contain enough facts to state a claim for relief "that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __ (2009); 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly,  550 U.S. 544, 570 (2007)).

The Court may not consider materials outside the pleadings on a motion to dismiss.  However, when considering a motion for judgment on the pleadings or a motion to dismiss under Rule 12(b)(6), a court may consider some materials that are part of the public record, Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), cert. denied, 527 U.S. 1039 (1999), as well as materials that are "necessarily embraced by the pleadings." Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F.Supp. 1146, 1152 (D. Minn. 1997). See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 199 (1990).   In considering Defendant's Motion to Dismiss, the Court will confine its consideration to the facts as pled in the Complaint and Plaintiff's sworn EEOC Charge of Discrimination, filed as Exhibit B to the Affidavit of Brian Benkstein in Support of Defendant's

Motion to Dismiss. The EEOC charge is referred to and embraced by the Complaint (¶ 47) and does not contradict the allegations in the Complaint.

### 2. Date of Termination

"Under the ADA, an employee must file a charge of discrimination. . . .within 300 days of the alleged discrimination." Henderson v. Ford Motor Co., 403 F.3d 1026, 1032 (8th Cir. 2005) (citing 42 U.S.C. § 12117.) A slightly longer period is available under the MHRA, which provides one year in which to commence a claim. Sundae v. Anderson, 02-CV-855 JRT/SRN, 2003 WL 24014321 at * 10 (D. Minn. 2003). Under both the ADA and the MHRA, causes of action accrue on the date on which the adverse employment action is communicated to the employee. Henderson, 403 F.3d at 1032; see also Turner v. IDS Fin. Servs., 471 N.W.2d 105, 108 (Minn. 1991). The limitations period begins to run even though the employee may not be aware of the employer's discriminatory effect or motive in taking the adverse employment action. Henderson, 403 F.3d at 1032 (citing Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995)).

Here, Plaintiff alleges that he received a letter from Kemps on June 24, 2008, informing him that he was terminated that same day. (Complaint ¶¶ 31; 11.) Although he alleges that he was confused and his union representative indicated that he would "straighten things out," Plaintiff nonetheless clearly identifies June 24, 2008 as the date upon which he was terminated. (Id.) Moreover, in his July 20, 2009 sworn Charge of Discrimination, Mr. Rothstein states that he was "unjustly terminated on June 24, 2008" and he represents that the latest date upon which the alleged discrimination occurred was July 29, 2008. (Discrimination Charge, Ex. B to Benkstein Aff.)

Despite Plaintiff's alleged "confusion," the Complaint makes clear that the date of termination – June 24, 2008 – was known and understood by Mr. Rothstein. Thus, the date upon which the adverse employment action of termination was communicated to Mr. Rothstein was June 24, 2008, regardless of whether Mr. Rothstein was aware of Kemps' alleged discriminatory effect or intent. See Henderson, 403 F.3d at 1033 (citations omitted); see also, Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) (holding that, in employment discrimination suit, statute of limitations began to run when tenure decision was made and plaintiff was notified).

Pursuant to the collective bargaining agreement, Mr. Rothstein alleges that he had the right to submit new bids for jobs following his termination. (Complaint ¶ 29.) Therefore, Plaintiff argues that his employment status essentially stayed the same from February 2008, when he was told he no longer had a position, (id. ¶ 29), until September 2009. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 12.) Assuming the truth of Plaintiff's allegations, as the Court must on a motion to dismiss, Mr. Rothstein's right to submit new bids for jobs, post-termination, does not alter the fact that his termination triggered the running of the statute of limitations. Both the Complaint and Mr. Rothstein's Charge of Discrimination identify June 24, 2008 as the date on which he received notice of termination. There is no question of fact for the jury as to Mr. Rothstein's termination date.

The case law makes clear that when a plaintiff alleges discrimination in the form of termination, the cause of action accrues when the employee is fired. See Conner v. Reckitt & Colman, Inc., 84 F.3d 1100, 1102 (8 Cir. 1996) ("Assuming Reckitt & Colman fired Conner because of her disability, the firing constitutes the discriminatory act. Reckitt & Colman's

7

failure to consider her later request for accommodation was merely a consequence of its discriminatory act.")

This Court therefore concludes, based on the allegations as pled by Plaintiff and his sworn Charge of Discrimination, that his termination, which occurred on June 24, 2008, was the relevant discriminatory act. Accordingly, Mr. Rothstein had 300 days in which to file an administrative charge under the ADA, which expired on April 20, 2009, and one year in which to file an administrative charge under the MHRA, which expired on June 24, 2009. Mr. Rothstein filed his administrative charge on July 20, 2009 and therefore failed to comply with the applicable statute of limitations.

### 3. Continuing Violation

Having determined that Mr. Rothstein failed to bring his claims within the mandatory limitations period, the Court must examine whether any provision tolls the period. Mr. Rothstein argues that the "continuing violations" doctrine applies to toll the statute of limitations. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 13). Essentially, Mr. Rothstein contends that Kemps had an ongoing duty to consider his bids for employment following termination, and because Kemps either ignored or rejected his requests to return to work, Kemps' course of conduct constitutes a continuing violation of his rights. Defendant responds that Mr. Rothstein's June 24, 2008 receipt of termination notice and his representations to the EEOC foreclose his reliance on the continuing violations doctrine. (Def.'s Reply Mem. Supp. Mot. Dismiss at 8.)

In his sworn Charge of Discrimination, Mr. Rothstein claims that the earliest date on which the discrimination took place was June 24, 2008 and the latest date on which the discrimination took place was June 29, 2009. Notably, Mr. Rothstein did not check off the

8

"continuing action" box in the "Date(s) Discrimination Took Place" section of the EEOC form. (See Ex. B. to Benkstein Aff.)

Under the continuing violations doctrine, a plaintiff may seek "redress for unlawful discriminatory acts which occurred prior to the statute of limitations period if they are related to violative acts which occurred within the statutory period." Smith v. Ashland, Inc., 179 F.Supp.2d 1065, 1069 (D. Minn.2000), aff'd, 250 F.3d 1167 (8th Cir.2001). The continuing violations doctrine, however, does not apply to separate, discrete acts:

> " '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.' " Tademe v. Saint Cloud State University, 328 F.3d 982, 988 (8th Cir.2003), quoting Nat'l R.R. Passenger Corp. v. Morgan, supra at 114, 122 S.Ct. 2061; see also, High v. University of Minnesota, 236 F.3d 909, 909 (8th Cir.2000) ("This court has never applied the continuing violations doctrine to a discrete act, such as failure to promote, and we decline to do so now.").

Onyiah v. St. Cloud State University, 655 F.Supp.2d 948, 963 -964 (D. Minn. 2009).

In Conner, the Eighth Circuit held that the plaintiff's post-termination request for accommodation did not constitute a continuing violation of the ADA. 84 F.3d at 1102. The plaintiff in Conner argued that she had timely filed her disability discrimination claim because she filed it within 300 days of her former employer's failure to respond to her post-termination request for reasonable accommodation. Id. at 1101-02. The court rejected plaintiff's argument, holding that the firing of an employee cannot be considered a continuing violation:

> We also reject Conner's argument that Reckitt & Colman's firing of Conner and its later failure to answer her letter constitute a continuing violation that tolls the statute of limitations. The firing of an employee cannot be a continuing violation, Rudolph v. Wagner Elec. Corp., 586 F.2d 90, 92 (8th Cir.1978), cert. denied, 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979), even when the effects of the firing are felt later, see Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167 (8th Cir.1995) (en banc). Conner's employment relationship with Reckitt &

9

> Colman ended when she was fired. <u>Reckitt & Colman cannot continue to discriminate against Conner when it no longer employs her</u>. Additionally, allowing Conner to restart the statute of limitations by sending a letter requesting reasonable accommodations after she has been unequivocally fired would destroy the statute of limitations. There is no continuing violation that tolls the statute of limitations in this case, and the district court properly granted Reckitt & Colman's motion for summary judgment on Conner's disability discrimination claim.

<u>Conner</u>, 84 F.3d 1100 at 1102 (emphasis added).

This Court, the Eighth Circuit, and other courts have held that a denial of a request for accommodation constitutes a discrete act and is not part of a continuing violation. <u>Quasius v. Schwan Food Co.</u>, 08-CV-575 (JNE/JJG), 2008 WL 4933764, *5 (D. Minn. Nov. 14, 2008) (citing <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002)); <u>see also</u>, <u>Conner</u>, 84 F.3d at 1002 (employer could not continue to discriminate against plaintiff when it no longer employed her and allowing plaintiff to restart the statute of limitations by requesting reasonable accommodations after termination would destroy the statute of limitations); <u>Townsend v. Bang, et al.</u>, No. 8:08CV132, 2009 WL 88107, *2 (D. Neb. Jan. 9, 2009) (employer's continued refusal to reinstate the employee since his termination did not constitute a new claim of discrimination and did not restart the 300-day limitations period); <u>Zdziech v. DaimlerChrysler Corp</u>., 114 Fed.Appx. 469, 472 (3rd Cir. 2004) (former employee could not establish a continuing violation, for purposes of 300-day statute of limitations on his disability claim under the ADA, by repeatedly asking for reinstatement.)

While Plaintiff cites <u>Richards v. CH2M Hill, Inc.</u>, 29 P.3d 175 (Cal. 2001), for the proposition that an ongoing failure to accommodate can, in some circumstances, lead to a continuing violation, as noted, the Eighth Circuit, and this Court, have held otherwise. <u>See Conner</u>, 84 F.3d at 1002; <u>Quasius</u>, 2008 WL 4933764 at *5. Moreover, the plaintiff in <u>Richards</u>,

unlike here, did not attempt to rely on post-termination failures to accommodate, but relied on the employer's refusal to accommodate prior to termination.

Plaintiff also cites to decisions of this Court in which it applied the Fifth Circuit's test in Berry v. Board of Supervisors of L.S.U., 715 F.2d 971 (5th Cir. 1983), when determining whether the continuing violation doctrine applies to toll the statute of limitations. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 18-19) (citing Koren v. Supervalu, Inc., 00-CV-1479 (ADM/AJB) 2003 WL 1572002 (D. Minn. March 14, 2003); Bradley v. American Home Prods. Corp., 00-CV-4 (JMR/SRN), 2002 WL 31317393 (D. Minn. Aug. 16, 2002)). The Berry court identified the following three non-exhaustive factors as relevant in its analysis: (1) whether the acts involve the same subject matter; (2) the frequency of the acts; and (3) the degree of permanence of the alleged acts of discrimination; that is, "whether an act outside the limitations period should have triggered the plaintiff's awareness of and duty to assert his or her rights." 715 F.2d at 981. The Berry analysis is most often employed in sexual harassment claims, and not in discriminatory treatment cases such as this, and in this Court's cases cited by Plaintiff applying the Berry test, this Court rejected the plaintiffs' continuing violation arguments and held that the continuing violations doctrine did not apply to discrete and identifiable employment decisions. See Koren, 2003 WL 1572002 at *10; Bradley, 2002 WL 31317393 at * 5-6.

Here, the Court need not apply Berry, because the Eighth Circuit's decision in Conner is determinative: Kemps cannot have continued to discriminate against Mr. Rothstein when it no longer employed him. Mr. Rothstein's termination on June 24, 2008 was a discrete act which ended the employment relationship. Moreover, Mr. Rothstein himself represented to the EEOC that the last date of discrimination was June 29, 2008, and when given an opportunity to identify

the dates or period of discrimination as a "continuing action," by checking a box on the EEOC's charge form, Mr. Rothstein failed to do so. (Charge of Discrimination, Ex. B to Benkstein Aff.)

Given the facts as alleged by Plaintiff, his sworn representations on the EEOC Charge of Discrimination, and the controlling law from the Eighth Circuit holding that termination is a discrete act, the Court concludes that the continuing violations doctrine is inapplicable. The Court therefore recommends the dismissal of Plaintiff's disability claims in Counts I and III of the Complaint.

### 4. MHRA Retaliation Claim

In addition to Plaintiff's claims for disability discrimination, he also alleges a claim for reprisal discrimination in violation of the MHRA. (Complaint, Count IV.) Plaintiff alleges that Kemps retaliated against him on April 9, 2009, the date on which he sent his last demand for reinstatement. (Complaint ¶ 46.) Plaintiff therefore contends that he was subjected to retaliation after his June 24, 2008 termination and that his retaliation claim was filed within the one-year statute of limitations under the MHRA.

Conner makes clear that an employer cannot discriminate against a former employee. 84 F.3d at 1102; see also Townsend, 2009 WL 88107 at *2. Although Plaintiff may have possessed certain rights under his union contract to bid for jobs following his termination, his termination occurred on June 24, 2008, many months before Plaintiff's alleged final act of retaliation in April 2009. Plaintiff's MHRA reprisal claim is therefore time-barred and the Court recommends the dismissal of Count IV of the Complaint.

### B. State Law Cause of Action

In addition to his federal claims, Plaintiff also asserts a state law workers' compensation

retaliation claim. (Complaint ¶ 54.) This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the court's original jurisdiction. A district court has discretion to decline supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). In most cases, when federal and state claims are joined and the federal claims are dismissed, the pendent state claims are dismissed without prejudice "to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" <u>Ivy v. Kimbrough</u>, 115 F.3d 550, 552-53 (8 Cir. 1997) (alteration in original) (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)). Because the Court recommends the dismissal of Plaintiff's federal claims, it recommends that it decline to exercise jurisdiction over Plaintiff's state law claim.

**THEREFORE, IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion to Dismiss Counts I, III and IV of the Complaint (Doc. No. 2) be **GRANTED**; and

2. Count II of the Complaint be **DISMISSED WITHOUT PREJUDICE** for reassertion of this state law claim in state court.

Dated: April 30, 2010

                                                         s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **May 17, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.